Here ye, here ye, here ye. This Honorable Court of the Second Judicial Court is now in session. Pursuant to adjournment, the Honorable Catherine E. Zinon, presiding. Thank you. Please be seated. This case of 214-045-1 by Rockett, the people of the state of Illinois, on behalf of Mary Gennar, on behalf of the Appellant, Barry W. Jacobs, on behalf of the Appellee, Liam Dixon. Good morning, Counsel. Mr. Jacobs. Good morning. I'm Barry Jacobs on behalf of the people of the state of Illinois, as Appellant in this case. In this case, the defendant was charged by indictment with obstruction of justice, alleging that after she was arrested, she knowingly destroyed, altered, concealed, or disguised physical evidence, and that she grabbed a pill bottle containing different colored pills, which were in police custody, and poured the pills into her mouth, swallowing all of said pills. Prior to trial, the defendant brought a motion to quash her arrest and suppress all the evidence connecting her to the crime charge, including verbal and written statements and gestural signals, as proof of an illegal arrest in her detention. Mr. Jacobs, in your brief, you argue lack of standing, which the court no longer uses, but reasonable expectation of privacy, and you argue that because she was no longer an invited guest, she did not have an expectation of privacy. Yes. However, the pill bottle was not seized from the home. It was seized from her person. Doesn't a person, regardless of where they're standing or sitting at the moment of a seizure, have an expectation of privacy in her own integrity, of her own body, and the items that she's in possession of at that time? Your Honor, that is correct. It's the State's position in this case that the seizure of the pill bottle was based upon the probable cause that developed during the course of this investigation into this domestic disturbance with a suicide attempt. Right. So are you conceding she had at least an expectation of privacy in her own body and the items that she possessed at the time? Yes. But the real issue in this case, Your Honor, I believe, is the application of the distinct crime exception to the exclusionary rule that the court in this case said was inapplicable. I believe it's clear, based upon the Abrams decision, the Bill of Regal decision, that the court's rationale was in error. The court in this case believed that for the distinct crime exception to the exclusionary rule to apply, there had to be some evidence of physical assault or threat to the officers, as I just indicated. Abrams doesn't make that kind of limitation upon the exception, nor does the Bill of Regal. And in this case, the defendant actually was able to utilize the exclusionary rule or would have been able to use the exclusionary rule to challenge both that search of the pill bottle and her arrest and perhaps have them suppressed on that basis because, as Your Honor kind of alluded to, her possession of the bottle could have been seen as a direct product of Officer Johnson's unlawful search. However, the exclusionary rule doesn't protect her conduct under the distinct crime exception following her arrest. And Abrams found that the exclusionary rule should not be extended to suppress evidence of a crime arising from an illegal search. And in this case, this was the defendant's post-arrest conduct. What about a post-arrest statement? Would that be still subject to the exclusionary rule if we were to find that the seizure was unlawful? Not according to the case law of the Abrams Bill of Regal. I mean, this defendant did try to suppress all of her conduct, including her, I guess, verbal and nonverbal statements. But there's no language in either of the cases, and I'm speaking of Abrams and Bill of Regal predominantly, which would indicate that any evidence of illegal conduct following arrest would be subject to exclusion under the Fourth Amendment. That is the crux of the state's argument. The standard here, of course, is de novo. And, you know, it's for this court to decide whether or not there was sufficient evidence that probable cause existed. What role were the police playing in this case when they responded to the call? Initially, they were, as I said, investigating a domestic disturbance with a subject or a boy threatening suicide. They're trying to save a life, correct? Yes. So isn't that kind of a hybrid? They're conducting an investigation, but not into criminal conduct, but a community caretaker. Not initially, yes. A community caretaker function. Correct. To protect. Well, as they learned information from the mother, from the sister in the case, and made some observations of the home where the suicidal subject had said drugs were located. And the child used the term ecstasy, correct? Yes. When the police did look on the, I think it was a computer desk, where the drugs were allegedly located, according to the suicidal, his name was Cody, the suicidal boy, they didn't find any drugs. But at that moment, Cody's younger sister approached and said the defendant in this case just took a pill bottle into the bathroom. And the defendant and Cody, the suicidal boy, always bring ecstasy into the home. So at that point, yes. But you didn't argue, the state did not argue community caretaking in the trial court, correct? No. Which, when I read the case, my impression is the police were trying to save a life. They don't know whether or not Mr. Sansalone has taken the drug or not. So it's important to get the drug for purposes of any medical care that's necessary, which is completely different than a conduct of the police in a search in a criminal. That's correct. And the court in this case did find that the police were lawfully present conducting, basically, a community caretaking function.  Trying to save a life. But again, if you look at the purpose of the exclusionary rule, it is not to protect the conduct that we're, this, this, I think this court describes it as a species of unlawful self-help. And the exclusionary rule has not been found to protect this type of conduct. What were these exigent circumstances? I mean, we've talked about community caretaking, but in connection with Justice Burkett's questions, I mean, were there exigent circumstances here that would have allowed the police to take this battle? I believe in the brief that I argue that the exigent circumstances, the reason they couldn't obtain a warrant, were because the defendant was standing over the toilet with this pill bottle. About to destroy, possibly to destroy. Possibly to destroy the evidence, which he ultimately did destroy. Yeah, but the bottle was closed at that time, was it not? That's correct. How did they open the bottle? Officer Johnson requested that she open the bottle. And she said no. Took the bottle and opened the bottle. It's my prescription, my name on it. That's still, I mean. The trial that identified both Sansalone and the defendant as the people bringing ecstasy into the home though, correct? That's correct. And the timing of the, this, in the brief I argue, if you want to blink up the name of the case. Talking about Green? Page 10 and 11? I guess, yes, I'm talking about Green and distinguishing Williamson. But in Green, in somewhat similar factual circumstances, this court found that there was probable cause based upon the, that developed over the court's investigation where they observed the defendant from standing on the porch, placed them beneath a cushion. Correct. And they also observed the smell of her cannabis. This court found that it gave rise to the officer's reasonable belief that cannabis would be located under the seat cushion. Similarly, in this case, probable cause gave rise to the, or the evidence gave rise to the reasonable suspicion. I can't even talk. Reasonable belief that ecstasy would be found in this pill bottle. But there, the defendant was clearly trying to hide the bottle. She was not. She was standing with it in her hand, is that correct? That's correct. Over the toilet. How big was the bathroom? Pardon me? How big was the bathroom? That's unclear from the record. I don't know. But again, the, even if this court believes the search, the arrest were improper, under the distinct crime exception, this defendant had no right, well, she can't claim the exclusionary rule protects her post-arrest conduct. Is this kind of like, even if the resisting arrest, when the arrest is bad, you still can't resist? Somewhat similar. Basically the analogy here? Yes. So, the state would ask that this court reverse the trial court's order granting this motion to quash arrest and suppress evidence. And I'll reserve the rest of my time for rebuttal unless there are questions. Okay, thank you. You may do so. Mr. Dixon. Thank you. This is the court. Counsel. Your Honor, I just have a fairly good grasp of a very simple situation here of what's going on. I'd like to first address, I know, Justice Burkett's questions regarding the expectation of privacy. I think Minnesota Olson gives her the privacy in the home, but she's got further privacy in her person and in, quite frankly, a closed pill bottle with her name on it while she's in a sealed bathroom. In an ordinary circumstance, somebody who's told to leave the home, especially when you're dating somebody who lives there, they'd give you a few days anyway, right? I think they would give you time to do it. Obviously, they didn't argue that there was any trespassing going on here. She testified she had clothes there. She had stayed there for the entire month. She was not merely just an overnight guest. And you're not challenging the entry into the home or even the knock on the door to the bathroom? Not at all, Your Honor. Your challenge is the seizure itself? The seizure itself. They were called there. The parents wanted them there. And then, Your Honor, went into the community caretaking function when they said they were there to save a life. I think it's belied by the point that they turned this into an investigation immediately. There's no evidence that there was any medicine or medical personnel that were called. There's no indication that there was anything physically wrong or apparently wrong with Cody, who had apparently threatened to commit suicide. There were some pills that were on a desk. There's no evidence that he even took those pills or that he even said that he took those pills. And once you made your prima facie showing, it would have been the state's burden to show that there was a community caretaking exception. Correct. And it was not argued that I didn't do that. The thing I wanted to ask you, you say in your brief that your client's acts are not independent of the illegal seizure as an assault, such as an assault to a police officer would be. Can you elaborate on that, and do you have any authority for that argument? Your Honor, I've looked for all the authority on this, and I think I was assuming that's why we were here today. The counsel argues a distinct exception. The difference between those cases and, quite frankly, the circumstances that Justice Jorgensen mentions, wherein you can't resist even an unlawful arrest, that's obviously the state of the law. However, that's an independent crime. That does not involve evidence that was illegally seized. That does not include the fruit of the poisonous tree, as it were. Well, those cases do involve, and there's a long line of authority, for unlawful arrests of persons. Still a Fourth Amendment analysis. This is an unlawful seizure, arguably, under the Fourth Amendment. And the independent crime exception, there's no distinction for purposes of whether or not there's an exception to the Fourth Amendment. When the defendant takes on his own, or her own, to violate police procedure, either injuring a police officer or destroying evidence, would it make sense to split hairs between seizing a piece of evidence that's been taken by the police unlawfully, or assaulting a police officer white? Why would it make any difference? I think it would make a great difference. Number one, protection of the police officer and of himself. There is no threat of harm to the police officer here. What we have is evidence, a physical piece of evidence that was seized. That would be the distinction as far as, I think, the rationale, as far as the resisting arrest statute. And I know it comes under the same statute, and they could have obviously even charged that here. It would be a physical act that would have delayed the arrest of this individual. Let's say this case goes to hearing, and you prevail in a motion to suppress, assuming that the defendant didn't destroy the evidence. What happens to the ecstasy? Do we give it back? As far as? Oh, no. It's contraband. It's just like a handgun. Right. If a handgun is seized from a bunch of gangbangers and gang members, and the police unlawfully secured those items, do we give those back? Those items are destroyed, and, quite frankly, the exclusionary rule then determines those officers. And the remedy is in a courtroom, not in a squad car, not in the alley, not in an apartment building. It's in the courtroom we have challenged the search. I agree. Not taking it upon yourself to say, you seized this evidence unlawfully, I'm destroying it, which is what she did, correct? Right. She didn't say that. She obviously, by her actions, said that's what she did. And, again, the exclusionary rule is not a protection of the defendant. It's a deterrent of the officer. And how does suppressing her arrest for obstructing justice deter the police in the future? Because if they had conducted their search lawfully, they would have had a Class 4 felony to charge her with. So I'm talking about deterrence. Is it reasonably foreseeable that people under arrest and items that have been seized from their persons are going to take it upon themselves to destroy it, or is it more likely that people are going to challenge the evidence in the courtroom? Obviously, I think they're going to challenge it in the courtroom. And I think in this case, if you deter these officers, they're going to conduct their searches lawfully and legally, and they're going to protect that evidence in a much- Let me ask you this. Yeah. It's about deterrence. And deterrence can take a number of factors. If I remember some of the original deterrence cases, it was not only unlawful arrests, but also procedures that police engaged in. And here, would the deterrence be that when you seize pills, let's assume for the sake of argument, they had- Well, Officer Johnson, I think, said, once I opened it, lawfully or unlawfully, I believed it to be ecstasy. Officer Johnson, correct. Did I get the wrong officer? Officer Johnson is there. Officer Winsak says yes. Anyway, is the procedure to be deterred leaving what you know to be contraband within the reach of a known addict? That would be- Would that be sufficient deterrence here, such that by leaving it there and not, apparently, not properly securing her in the backseat handcuffed, because she was able to get out of them, and then the pills are right there and she takes them? Is that conduct that we could legitimately deter? I believe so. Why? Because, Your Honor, you have multiple officers there. You have multiple officers on the scene. Rather than having that evidence within the scope of somebody who you believe to be an addict, and again- Or a user, whatever. User, addict, whoever, that's there doing it. I think that deterrence would be conducting the proper procedures. You've got multiple officers who are there. You have opportunities to remove the people from the house. The case law has them doing that, where they can remove it and they can go get a warrant from the court. There's also a long line of cases. First of all, here you have a person who is threatening suicide, a child who says, Mr. Sansalone and the defendant have been bringing ecstasy into the home. The police are looking in an area where Mr. Sansalone says, that's where you're going to find the drugs, but they're not there. And then they knock on the bathroom. Again, you don't challenge the presence or even the knock on the bathroom door. The defendant opens the door. She has the pill bottle in her hand, and she tells the police when they ask what's in the bottle, she says it's my herpes medication. And they apparently don't believe her, but they take it to protect it from being destroyed. And then they search it. They open it and they search it. They search it. They take it from her without her consent. So they should have gotten a search warrant before they opened the bottle. They could have secured the bottle, but they should have gotten a search warrant. They could have secured the bottle throughout this entire process. And obtained a warrant. Correct. And they could have secured it throughout the entire process. Couldn't they have simply looked? It's a prescription bottle, and the evidence is that it was clearly marked with her name on it. It would also have a date on it. Take judicial notice that prescriptions have a date they are issued. Couldn't they have just looked at the date to see if it was current or not? Obviously, a non-current label would be more an indication that it's used to store other things versus if it had a current date on it, more likely, probably very likely, it's the prescription that it says it contains. Did they do that? Is there anything in the record to say they looked at the label beyond her name? I thought there was some evidence that her name was on it, that he knew her name was on it. But other than that, I don't know that there's anything in the record about what they had done. The trial court did also get to see evidence of the defendant and the officers, the defendant being 5'0 and the officers being taller than me. One last issue that I'd like to go over. The police officer is on premises legally, and he has authority to be on premises legally. Your argument is that, and they have probable cause to believe there's controlled substances in the house. In fact, this individual is one of the people that's bringing controlled substances into the house. Your argument is that even though they're on the premises legally, and they seize an item that they clearly have probable cause to seize, they need to get a search warrant to open the bottle? Correct. I think that's an additional search. I don't know that they necessarily have the probable cause to even seize the bottle.  I'm saying they have the right to be there. They know there's drugs in the house, according to the trial, according to the suicide threat. They know that the drugs, the location of the drug, Mr. Sassolon says it's there. They know it's not there because they looked there. It's been taken away. Somebody has it. And the other person who's alleged to have been bringing drugs into the home is your client, and she's in the bathroom. They knock on the door, and they see her with a pill bottle, which is an ordinary location for pills, which is what they're looking for. Is that splitting hairs? Now they have to take the effort to go get a search warrant before they can open and look to see whether or not it is what she's represented it to be, her piece of medication, or is it ecstasy, which the child claims was being brought into the home? Well, the child claims it was being brought into the home all the time. Her brother and his girlfriend do that. He says it's up there. They did not search for any other medication within that house. We have no idea how many pill bottles were in that house. We have no idea if the pill bottle fell beneath the desk, if somebody else took it, if Mr. Cody Sassolon himself had taken it. All we know is that when they ordered her to open the door, she opens the door. There is a closed pill bottle with her name on it for a prescription. At that point, I believe that they needed something else to do that. They have no other indication that he is in distress in any way, shape, or form, and they don't have an indication of what type of medication he was going to take to attempt this alleged suicide. Whether it was ecstasy, obviously it would have been a failed attempt because we know what happened in this case when these pills were taken. The officers also say that they had probable cause because she was standing over the toilet. However, I think the factual question that the judge in this case decided was she was opening the door. So either this was an extremely small bathroom, in which case you cannot come to that conclusion because she's opening the door, or she wasn't opening the door. So there was no danger of destruction? There was no danger of destruction. We have a closed pill bottle, and she's at the door. She could have been dumping them out the entire time. With a closed pill bottle and at the door, opening the door, that issue I think goes away. Was there a frame of reference time-wise on how much time the police had? They did not give a time frame in court, I don't believe. I know they said they were knocking on the door, banging on the door. I don't believe there was any. I know Your Honor asked about exigent circumstances. There was no indication of flight, hot pursuit, anything to that effect. And again, once we see a closed pill bottle where she's opening the door at their request, I think all of the fears of destruction of evidence are alleviated at that point. Thank you. So for what reason were the police permitted to open that pill bottle? Your Honor, it's the State's position that the State presented evidence that there was a sufficient nexus between that pill bottle and criminal activity, and that's the distinction between Williamson that I was— I was just going to ask the follow-up. What is the nexus? Can you articulate for us what that nexus is? The nexus are those facts that Officer Johnson learned. Initially this was a community caretaking function. This was a situation where they were trying to protect this young man's life. But as they began talking to the younger sister, they learned that there were drugs in the house. So whether or not the emergency situation had dissipated or not, at that point the police already had evidence that there were illicit drugs, specifically ecstasy, in the house. So ecstasy, though, the police knew are pills, right? They knew they were pills. It would have been contained probably in the bottle. Well, in fact, the young girl did say that she just took a pill bottle into the bathroom, the defendant. So this all builds upon the idea that there is a nexus between that pill bottle and the pills that the police are searching for, the ecstasy that they're searching for. So this case is unlike Williamson because there actually was— You just made the point, the pill bottles, the pills that they're searching for. At that point in time, why not stop and get a warrant? They know the emergency is over. Now they're conducting a drug investigation which involves a private residence. Why not go and get a search warrant? They could have gone to get a search warrant. However, in all likelihood, those drugs would have been flushed down the toilet or— Come on. You mean to tell me that every time these guys go get a warrant that they don't guard the house, they don't put everybody— She had the bathroom door locked. She opened the door. She eventually did open the door. And there was nothing destroyed. The toilet wasn't flushing. Why couldn't they have secured the scene and simply gotten a warrant? And isn't the young girl, the sister or the daughter, say they're somewhere in the house? Does she ever indicate the bathroom or even upstairs? Or does she simply say in the house? Regarding the drugs?  She says they bring drugs into the house. The house. She also says that the defendant just took a pill. No, you said she just went into the bathroom. Now what is it? Is it she took them or she went into the bathroom? She took a pill bottle. She took in terms of carrying it into the bathroom. She took a pill bottle into the bathroom, carried a pill bottle into the bathroom. That took pills. I didn't mean to imply that she consumed them at that point. Well, Mr. Dixon's point is that the danger of destruction was gone because the pills were still in the bottle. They could tell that when they handled the pills, and they should not have opened it. They should have gotten a warrant. Even if the fear of destruction was there and was a realistic danger, they still should have gotten a search warrant. Let me just ask related to that. Was the community caretaking function for which they were called to the house finished for sure at that point? Or was it continuing during the period of time that they actually took possession of the pill bottle and opened it? The state would argue that the community caretaking function continued, although perhaps the emergency was over. The police were still attempting to determine what pills this young man had threatened to take. He, in fact, said they were upstairs on the computer desk. That's how the police were directed to the upstairs where the defendant was located. But as I said in my initial argument, this case turns upon the application of a distinct crime exception. This defendant had been placed under arrest at the point of the conduct that she's seeking to suppress. And there's simply... But why aren't we trying to deter police procedure to leave... We can deter improper procedure if we're trying to deter someone from cuffing someone more tightly. I don't think we can deter... No, leaving the evidence clearly within her reach. She didn't have to move to take those pills. Well, she had to slip out of the handcuffs to do it. So I don't think we can deter or promote better routine procedure. We can deter illegal procedure. We can deter foreseeable. Yes, but obviously the police would not have... She was cuffed behind her back, I might add. They couldn't have foreseen that she was going to slip out of the cuffs and grab the open pill bottle and consume it. But again, as I said, and I'll reiterate, this case turns upon the application of the distinct crime exception. The exclusionary rule doesn't allow her... She would have been fine. She perhaps would have been fine if this court or the trial court found no probable cause. She would have evaded a drug charge or a drug conviction. But she can't destroy the evidence and then claim the exclusionary rule protects her. Thank you. Thank you. At this time, the court will take a matter under advisement and render a decision in due course. We stand in brief recess until the next case. Thank you, counsel. Thank you.